# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

STUCCHI USA, INC.,

  Plaintiff, Counterclaim-Defendant
 v.

HYQUIP, INC.,

                 Case No. 09-CV-732

  Defendant, Counterclaimant, and
  Third Party Plaintiff,
 v.

STUCCHI S.p.A.,

  Third Party Defendant.
_____

# ORDER

On July 27, 2009, plaintiff, Stucchi USA, Inc ("Stucchi USA") brought suit against defendant Hyquip, Inc. ("Hyquip") seeking: 1) a declaratory judgment finding that Hyquip is not a "dealer" under the Wisconsin Fair Dealership Law; 2) a declaratory judgment stating that Hyquip has no contract with Stucchi USA; and 3) injunctive relief. Hyquip responded by filing an answer, counterclaims, and a third party complaint. Hyquip's counterclaims against Stucchi USA consist of claims for breach of contract, anticipatory repudiation of contract, violations of the Wisconsin Fair Dealership Law, and tortious interference with prospective contractual advantage. Hyquip's third party complaint, brought against Stucchi S.p.A. ("Stucchi

Italy"), alleges the exact same claims as Hyquip's counterclaims.[1] In response to Hyquip's filings, Stucchi USA filed a motion to dismiss Hyquip's counterclaims or, in the alternative, for a more definite statement. Similarly, Stucchi Italy filed a motion to dismiss Hyquip's third party complaint or, in the alternative, for a more definite statement. Upon review of the motions before the court, the court finds that Hyquip's counterclaims and third party complaint should be dismissed. Additionally, Hyquip filed a motion for leave to file a surreply, and Stucchi Italy objected and filed its own motion for leave to file a surreply. These latter two motions are little more than a quibble over semantics, and are as much a waste of the court's time as they are a waste of the parties' resources; accordingly, the court concludes that they should be denied.

## BACKGROUND

Stucchi Italy is an Italian corporation that manufactures hydraulic equipment. Stucchi USA is an Illinois corporation, and is a subsidiary of Stucchi Italy. Stucchi USA markets, promotes, sells, and distributes Stucchi Italy's products in North America. Hyquip is a Wisconsin corporation that distributes fluid connection and hydraulic parts and accessories for manufacturers whose product lines require such components.

In the autumn of 2008, Stucchi USA and Hyquip entered into an oral distributor agreement ("Stucchi-Hyquip distributor agreement") under which Hyquip

---

[1] Indeed, the counterclaims and third party complaint are "substantially identical." (Counterclaims, ¶ 1).

would serve as a distributor of Stucchi products. In December 2008, Stucchi USA attended a meeting wherein Hyquip introduced Stucchi USA to one of Hyquip's customers, TNT Rescue Services, Inc. ("TNT"). According to Hyquip, additional meetings ensued, and the companies – Hyquip, TNT, Stucchi USA, and Stucchi Italy – discussed TNT's need for a custom designed and produced product ("the Product"),[2] as well as the Stucchi companies' ability to design and produce said product. According to Hyquip, throughout the first six months of 2008, the companies – Hyquip, TNT, and the two Stucchi companies – worked together to design and produce the Product. Then, sometime in June 2008, Stucchi USA informed Hyquip that it would be selling the Product directly to TNT, and that it would not be using Hyquip as an intermediary. Thereafter, this litigation ensued.

## ANALYSIS

Counterclaim defendant, Stucchi USA, and third party defendant, Stucchi Italy (referred to collectively as "defendants") have moved for dismissal of each of Hyquip's claims and counterclaims. Defendants raise several arguments that are not entirely germane (such as whether distribution of new products, such as the one at issue here, was a "principal purpose" of the Stucchi-Hyquip distributor agreement), as well as other arguments that are simply inappropriate in a motion to dismiss (such as arguments that rely on affidavit evidence or documents not referred

---

[2] The custom product TNT sought was a hydraulic dual-line quick-coupling with integral shunt valve.

-3-

to in the pleadings).³  However, despite the shortcomings of much of defendants' briefs, Hyquip's claims and counterclaims are ripe for dismissal on their face.

I.     **Legal Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the claimant's counterclaims and complaint by asserting that the claimant failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), claimant's counterclaims and complaint must allege facts sufficient to "state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 557 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  Claimants must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 1129 S. Ct. at 1940.  However, the court construes the complaint in the light most favorable to the claimant, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the claimant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

---

³ Normally, the court cannot consider documents outside the pleadings before the district court unless the court converts the defendant's Rule 12(b)(6) motion to one for summary judgment and allows the plaintiff to submit additional evidentiary material of his own. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Accordingly, the court, in the instant case, ignored all of defendants' arguments that rely on documents other than the pleadings or those documents referenced in Hyquip's pleadings.

## II. Breach of Contract

Hyquip alleges that defendants'[4] decision to sell the Product directly to TNT constitutes a breach of the Stucchi-Hyquip distributor agreement. However, Hyquip does not provide any details as to the circumstances or terms of the Stucchi-Hyquip distributor agreement. "A complaint [(or counterclaim)] states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 2006 WI App 39, 11, 714 N.W.2d 582. To allege "a contract between [Hyquip] and defendant[s] that creates obligations flowing from . . . defendant[s] to Hyquip," Hyquip must allege more than that there was an "agreement" between the parties; it must allege that there was a binding and enforceable agreement (a contract). A contract requires an offer, acceptance, and consideration; additionally, it would typically be embodied in a written document. The only written document Hyquip references is a "Notice of Open Account"[5] that Stucchi USA gave to Hyquip after the formation of the Stucchi-Hyquip distributor agreement. This document, in pertinent part, states that Hyquip

---

[4] Hyquip, throughout its counterclaim and third party complaint, repeatedly refers to Stucchi USA and Stucchi Italy collectively as "Stucchi". This practice makes it impossible for the court to determine which of these two separate and distinct parties Hyquip alleges engaged in which activity. Had Hyquip's claims survived dismissal, they would certainly have needed re-drafting so as to be more definite.

[5] The "Notice of Open Account" is referenced in Hyquip's pleadings, thus the court may consider it.

-5-

has been approved by Stucchi USA for credit, that Hyquip should send a quote request for custom orders or proprietary product, and then gives the fax number and email address to which purchase orders should be sent. (Pl. Mot. Dismiss, Ex. B). From all indications, there was no binding contract. The contracts would have come in the form of the purchase orders contemplated by the "Notice of Open Account".

However, assuming the court is incorrect, and assuming that the Stucchi-Hyquip distributor agreement is a binding and enforceable contract that entitles Hyquip to sell all Stucchi products (not just catalog products, but also all custom made products as well), Hyquip's breach of contract claims still must fail for one simple reason. The Hyquip-Stucchi distributor agreement was not exclusive. Indeed, Hyquip admits that it was not exclusive. (Answer, ¶ 12). Thus, even if the Hyquip-Stucchi distributor agreement gave Hyquip the right to sell the Product to TNT, it clearly did not give Hyquip the exclusive right to sell the Product to TNT. Resultingly, if TNT ordered the Product from Stucchi USA (as Stucchi USA has alleged in paragraph 75 of its complaint), then Stucchi USA was free to fill that order, and doing so did not violate any contract with Hyquip. Hyquip has not alleged that Hyquip ever actually sent in a purchase order for the Product. Had Hyquip sent in a purchase order for the product, and Stucchi USA had refused to fill said order, then Hyquip would have a breach of contract claim (if in fact the Stucchi-Hyquip distributor agreement is a binding contract giving Hyquip the right to sell every Stucchi product). As there is no allegation suggesting that occurred, Hyquip has not alleged breach

-6-

Case 2:09-cv-00732-PJG   Filed 07/28/10   Page 6 of 16   Document 49

has been approved by Stucchi USA for credit, that Hyquip should send a quote request for custom orders or proprietary product, and then gives the fax number and email address to which purchase orders should be sent. (Pl. Mot. Dismiss, Ex. B). From all indications, there was no binding contract. The contracts would have come in the form of the purchase orders contemplated by the "Notice of Open Account".

However, assuming the court is incorrect, and assuming that the Stucchi-Hyquip distributor agreement is a binding and enforceable contract that entitles Hyquip to sell all Stucchi products (not just catalog products, but also all custom made products as well), Hyquip's breach of contract claims still must fail for one simple reason. The Hyquip-Stucchi distributor agreement was not exclusive. Indeed, Hyquip admits that it was not exclusive. (Answer, ¶ 12). Thus, even if the Hyquip-Stucchi distributor agreement gave Hyquip the right to sell the Product to TNT, it clearly did not give Hyquip the exclusive right to sell the Product to TNT. Resultingly, if TNT ordered the Product from Stucchi USA (as Stucchi USA has alleged in paragraph 75 of its complaint), then Stucchi USA was free to fill that order, and doing so did not violate any contract with Hyquip. Hyquip has not alleged that Hyquip ever actually sent in a purchase order for the Product. Had Hyquip sent in a purchase order for the product, and Stucchi USA had refused to fill said order, then Hyquip would have a breach of contract claim (if in fact the Stucchi-Hyquip distributor agreement is a binding contract giving Hyquip the right to sell every Stucchi product). As there is no allegation suggesting that occurred, Hyquip has not alleged breach

of contract, even assuming that there was a contract in place to be breached. Accordingly, Hyquip's claim for breach of contract must be dismissed.

## III. Anticipatory Repudiation of Contract

Anticipatory repudiation of a contract occurs when a party disclaims a contractual duty prior to the time specified in the contract for the performance of the duty. *See Wisconsin Power & Light Co. V. Century Indem. Co.*, 130 F.3d 787, 793 (7th Cir. 1997) (applying Wisconsin law). A claim of anticipatory repudiation of a contract requires the allegation that there was a valid and enforceable contract. Again, the court is not satisfied that Hyquip's complaint contains such an allegation. However, assuming that it does, and assuming that it sufficiently alleges that the Hyquip-Stucchi distributor agreement entitles Hyquip to sell all Stucchi products, Hyquip still has not alleged that Stucchi USA repudiated said contract. Hyquip has only alleged that Stucchi USA stated that it was going to sell the Product to TNT directly. Hyquip does not allege that Stucchi USA stated to Hyquip that it would refuse to fill orders for the Product if Hyquip were to send in purchase orders for the product. Further, Hyquip has not alleged that there was a contract specifically

entitling it to purchase the Product from Stucchi USA and sell it to TNT.[6] Given that the Stucchi-Hyquip distributor agreement was not exclusive, Stucchi USA would not have repudiated the agreement (even according to Hyquip's conception of the agreement) by simply informing Hyquip that it was going to sell the Product directly to TNT (as is alleged), rather Stucchi USA would have had to have stated that it would not fill purchase orders for the Product (which is not alleged). Accordingly, Hyquip's claim for anticipatory repudiation must be dismissed.

## IV.  Violation of the Wisconsin Fair Dealership Law

In 1974, the Wisconsin legislature enacted the Wisconsin Fair Dealership Law ("WFDL") in order "to protect dealers against unfair treatment by grantors." *Eisencorp, Inc. v. Rocky Mountain Radar, Inc.,* 398 F.3d 962, 965 (7th Cir. 2005). In relevant part, the WFDL states that "no grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause." Wis. Stat. § 135.03.  Hyquip contends that it is a "dealer" (as that term is defined in Wis.

---

[6] The closest Hyquip comes to making such an allegation is found in paragraph 46 of its counterclaims where it alleges:

> Later in the day on June 8, 2009, Luca Stucchi, Boone Powell and Scott Rolston of Stucchi and Ken Hattori and Shawn Frazier of HyQuip discussed pricing for the new TNT product. They agreed that HyQuip would sell the new TNT custom product to TNT for $259 each. The parties further agreed that Stucchi would sell the new TNT product to HyQuip at a price that would allow a distributor margin of at least 20%.

(Counterclaims, ¶ 46). However, the above does not sufficiently allege the existence of a contract, nor does Hyquip allege that the June 8, 2009 "agreement" was repudiated; the only contract it alleges as being repudiated is the Stucchi-Hyquip distributor agreement.

-8-

Stat. § 135.02(2)) of Stucchi products, and that Stucchi USA's actions constituted a substantial change in the competitive circumstances of the Hyquip-Stucchi agreement without "good cause" (as that term is defined in Wis. Stat. § 135.02(4)). Additionally, Hyquip alleges that Stucchi USA violated Wis. Stat. § 135.04, which requires grantors to give ninety days notice of a substantial change in competitive circumstances, and to give the reasons for the change, and to allow the dealer sixty days to rectify any claimed deficiency.

The thrust of defendants' argument for dismissal of Hyquip's WFDL claim is that Hyquip was not a "dealer" as defined by the WFDL, because to be a "dealer" a party must be the grantee of a "dealership," and the existence of a "dealership" – according to § 135.02(3)(a) – requires a "community of interest," which defendants allege did not exist.[7] "'Community of interest' means a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services." Wis. Stat. § 135.02(1).

Unfortunately, there is not a bright-line test for determining the existence of a community of interests. "The two primary guideposts Wisconsin courts have established are (1) continuing financial interest and (2) interdependence, which must be great enough to threaten the financial health of the dealer if the grantor exercises its power to terminate." *Home Protective Services, Inc. v. ADT Security Services,*

---

[7] Hyquip's only response to defendants' argument is the contention that defendants rely on impermissible evidence to support their case. While Hyquip's point is well taken, it fails to refute the permissible evidence (i.e., the facts contained in the pleadings) on which defendants also rely.

-9-

*Inc.*, 438 F.3d 716, 719 (7th Cir. 2006) (citing *Cent. Corp. v. Research Prods. Corp.*, 681 N.W.2d 178, 186 (2004)). The Wisconsin Supreme Court has identified a long, non-exhaustive, list of factors to consider in evaluating interdependence; however "[t]hese factors may be distilled into two highly important questions in establishing a community of interest: (1) the percentage of revenues and profits the alleged dealer derives from the grantor and (2) the amount of time and money an alleged dealer has sunk into the relationship." *Home Protective Services*, 438 F.3d at 720 (citing *Baldewein Co. v. Tri-Clover, Inc.*, 606 N.W.2d 145, 151 (2000)). Ultimately, the question "is whether the grantor has the alleged dealer 'over a barrel' – that is, whether it has such great economic power over the dealer that the dealer will be unable to negotiate with the grantor or comparison-shop with other grantors." *Home Protective Services*, 438 F.3d at 720 (citing *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 464-65 (7th Cir.2001)).

Undoubtedly, the question of whether defendants had Hyquip "over a barrel" is a factual question, and thus one typically not appropriate for a Rule 12(b)(6) analysis. However, in the instant case, the undisputed facts before the court establish, as a legal matter, that defendants did not have Hyquip over the proverbial barrel. In paragraphs nine and ten of Stucchi USA's complaint, Stucchi USA alleged that, at the time of filing, Hyquip had only placed approximately $11,000 worth of orders with Stucchi USA, and that sales of Stucchi products accounted for a small percentage of Hyquip's yearly sales – which were estimated at approximately four

-10-

to five million dollars. Hyquip responded by denying the "innuendo" in these allegations.[8] By denying some vague "innuendo" that is not present in Stucchi USA's allegations, and entirely failing to deny the substance of Stucchi USA's allegations, Hyquip is deemed to have admitted such allegations. *See* Fed. R. Civ. P. 8(b)(4) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). Additionally, in response to the allegation in paragraph eleven of Stucchi USA's complaint, Hyquip admitted that it is a dealer for at least two of defendants' competitors.

Thus, the undisputed facts show that: 1) Hyquip's distributor agreement with Stucchi USA was less than a year old at the time Stucchi USA allegedly changed the competitive circumstances; 2) sales of Stucchi-products constituted a very small percentage of Hyquip's overall business; and 3) Hyquip is a dealer for at least two of defendants' competitors. By contrast, in *Home Protective Services*, the Seventh Circuit affirmed a district court ruling finding no community of interest for a plaintiff that derived 95% of its revenue from the defendant in that case, and devoted 95% of its personnel hours to its arrangement with that defendant. 438 F.3d at 720. Because the plaintiff in *Home Protective Services* "could (and did) find another grantor to work with, it was not 'over a barrel.'" *Id.* Accordingly, it appears

---

[8] Such response is of course a violation of Federal Rule of Civil Procedure 8(b)(2), which states:

> **(2)** **Denials – Responding to the Substance.** A denial must fairly respond to the substance of the allegation.

abundantly clear that there was no community of interest in the instant case (as Hyquip was not "over a barrel"), and it is equally clear that Hyquip has failed to sufficiently allege a community of interest (an integral aspect of plausibly alleging that Hyquip was a "dealer" as defined by the WFDL).

## V. Tortious Interference with Agreement and with Prospective Contractual Advantage

Defendants have also moved to dismiss Hyquip's claim that defendants tortiously interfered with Hyquip's prospective contract to sell the Product to TNT. Under Wisconsin law, the elements of tortious interference with a contract are as follows:

(1) the plaintiff had a contract or prospective contractual relationship with a third party;

(2) the defendant interfered with the relationship;

(3) the interference was intentional;

(4) a causal connection exists between the interference and the damages; and

(5) the defendant was not justified or privileged to interfere.

*Brew City Redevelopment Group, LLC v. Ferchill Group*, 2006 WI 128, ¶ 37, n. 9, 724 N.W.2d 879. Defendants attack Hyquip's tortious interference claim on several fronts.

First, defendants cite *Shank v. William R. Hague Inc.*, 16 F. Supp. 2d 1038, 1044 (E.D. Wis. 1998), for the proposition that "Wisconsin courts require that the pleading party produce 'at least sufficient evidence of a prospective *contract*

between plaintiff and the third party.'" (Pl. Br. Supp. Mot. Dismiss at 14; Third Party Def. Br. Supp. Mot. Dismiss at 17) (quoting *Shank*, 16 F. Supp. 2d at 1044). Defendants then go on to cite to an affidavit from Mr. Tom Blanton, the president of TNT, as support for the proposition that Hyquip did not have a prospective contract with TNT. Defendants miss the mark on both points. First, *Shank* involved a motion for summary judgment, not a motion to dismiss. Thus, while a plaintiff alleging tortious interference must indeed produce sufficient evidence of a prospective contract at the summary judgment phase, it must only plausibly allege a prospective contract at the motion to dismiss phase. Hyquip has done so by alleging that it had an oral agreement with Hyquip with respect to Hyquip's supplying the Product to TNT. (Counterclaim ¶ 67; Third Party Complaint ¶ 67). Secondly, Mr. Blanton's affidavit is completely irrelevant and inappropriate in support of a motion to dismiss, thus, the court ignores it and the arguments that rely on it, in totem.

Defendants next attack Hyquip's tortious interference claim on the second and third prong. Wisconsin law requires more than interference; it requires that the interference be intentional. *See Mackenzie v. Miller Brewing Company*, 2000 WI App 48, 608 N.W.2d 331. In order to prevail on the claim, Hyquip must establish that interference with Hyquip's prospective contract with TNT was defendants' "primary purpose," or that defendants "knew or should have known that interference was substantially certain to occur as a result of the conduct." WIS JI-CIVIL 2780 (quoted in *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 49, 720 N.W.2d 531). Hyquip has

-13-

not alleged any facts that would make it plausible to think that defendants' decision to sell the Product directly to TNT was "primarily" aimed at interfering with Hyquip's prospective contract with TNT. However, certainly Hyquip has alleged facts that, if true, would make it plausible that defendants "knew or should have known" that selling the Product directly to TNT would interfere with Hyquip's prospective contract to sell the Product to TNT.

Wisconsin law also requires that the intentional interference be "improper." *Mackenzie*, 2000 WI at ¶ 62. While propriety is a factual question, it is impossible to discern any part of Hyquip's pleading that would make it plausible that a fact-finder could reasonably hold that either of defendants improperly interfered with Hyquip's prospective contract with TNT. There is no allegation that either Stucchi USA or Stucchi Italy had entered into an exclusive contract with Hyquip for the sale of the Product to Hyquip (which would then sell the Product to TNT). Absent such an allegation, or some other allegation of impropriety in regards to defendants' decision to sell the Product directly to TNT, a claim for tortious interference will not lie. Indeed, at best, plaintiff has alleged that defendants acted improperly by unjustly enriching themselves at Hyquip's expense by failing to compensate for Hyquip's assistance in developing the Product. However, it is not sufficient to allege that defendants treated Hyquip improperly in general, rather, to plead a tortious interference claim, the manner in which defendants interfered with the prospective contract must be improper. As previously explained, given the fact that the Stucchi-

-14-

Hyquip distributor agreement was not exclusive – thus Stucchi USA was well within its rights to sell the Product directly to TNT (even under Hyquip's construction of the agreement) – there was nothing "improper" about Stucchi USA agreeing to sell the product directly to TNT, even if doing so interfered with Hyquip's prospective contract with TNT. Thus, Hyquip's tortious interference claim must be dismissed.

## CONCLUSION

For the foregoing reasons, each of Hyquip's counterclaims and third party complaint claims must be dismissed. That said, on the state of the record, the court is unable to determine if Hyquip's claims and counterclaims are truly without merit, or if they are the product of poorly drafted pleadings. Therefore, the court will dismiss Hyquip's counterclaims and third party complaint without prejudice, providing Hyquip the opportunity to replead and cure the deficiencies, should the facts so warrant.

Accordingly,

**IT IS ORDERED** that Stucchi USA's Motion to Dismiss Hyquip's Counterclaims (Docket #31) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Stucchi SpA's Motion to Dismiss Hyquip's Third Party Complaint (Docket #43) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Hyquip's Counterclaims (Docket #9) and Third Party Complaint (Docket #10) be and the same are hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Hyquip's Motion for Leave to File Surreply Brief (Docket #47) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Stucchi SpA's Motion for Leave to File Surreply Brief (Docket #48) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge