# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

STUCCHI USA, INC.,

      Plaintiff, Counterclaim-Defendant

  v.

HYQUIP, INC.,

      Defendant, Counterclaimant, and
      Third Party Plaintiff,

  v.

STUCCHI S.p.A.,

      Third Party Defendant.

Case No. 09-CV-732

_____

# ORDER

On July 27, 2009, plaintiff, Stucchi USA, Inc. ("Stucchi USA") brought suit against defendant Hyquip, Inc. ("Hyquip") seeking: 1) a declaratory judgment finding that Hyquip is not a "dealer" under the Wisconsin Fair Dealership Law; 2) a declaratory judgment stating that Hyquip has no contract with Stucchi USA; and 3) injunctive relief. Hyquip responded by filing an answer, counterclaims, and a third party complaint. Hyquip's original counterclaims against Stucchi USA consisted of claims for breach of contract, anticipatory repudiation of contract, violations of the Wisconsin Fair Dealership Law, and tortious interference with prospective contractual advantage. Hyquip's third party complaint, brought against Stucchi S.p.A. ("Stucchi Italy"), alleged the exact same claims as Hyquip's counterclaims. In response to Hyquip's filings, Stucchi USA filed a motion to dismiss Hyquip's

counterclaims or, in the alternative, for a more definite statement. Similarly, Stucchi Italy filed a motion to dismiss Hyquip's third party complaint or, in the alternative, for a more definite statement. On July 28, 2010, the court ordered Hyquip's counterclaims and third party complaint dismissed without prejudice, finding the defendant had failed to state a claim upon which relief may be granted for each count in its third party complaint and counterclaims, and providing Hyquip with the opportunity to replead and cure the deficiencies of its original answer and third party complaint, if the facts so warranted. Accordingly, Hyquip filed an amended answer, counterclaims, and third party complaint on September 3, 2010. In response, Stucchi filed another motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is now before the court.

## BACKGROUND

Stucchi Italy is an Italian corporation that manufactures hydraulic equipment. Stucchi USA is an Illinois corporation, and is a subsidiary of Stucchi Italy. Stucchi USA markets, promotes, sells, and distributes Stucchi Italy's products in North America. Hyquip is a Wisconsin corporation that distributes fluid connection and hydraulic parts and accessories for manufacturers whose product lines require such components.

In the fall of 2008, Stucchi USA and Hyquip entered into an oral distributor agreement under which Hyquip would serve as a distributor of Stucchi products.[1] In

---

[1]The scope of this general distribution agreement is disputed.

December 2008, Stucchi USA attended a meeting wherein Hyquip requested the Stucchi companies' assistance in developing and manufacturing a custom product for one of Hyquip's long-time customers, TNT Rescue Services, Inc. ("TNT").[2] Though Hyquip's pleadings are unclear as to the timing, Stucchi USA, Stucchi Italy, and Hyquip agreed at some point in these early discussions that the Stucchi companies would be the exclusive supplier and manufacturer of the custom product and Hyquip would serve as the exclusive distributor of the custom product to TNT. According to Hyquip, throughout the first six months of 2009, the companies, including TNT, all worked together to design and produce the custom product. Hyquip alleges that on June 8, 2009, the Stucchi companies and Hyquip met and finalized the details of the exclusive distributor contract. TNT was also present at the meeting. However, on June 18, 2009, ten days after the exclusive distribution agreement's terms were finalized, Stucchi USA informed Hyquip that it would be selling the custom product directly to TNT, and that it would not be using Hyquip as an intermediary. Thereafter, this litigation ensued.

## DISCUSSION

### I. LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, the plaintiff's complaint (or in this case, Hyquip's counterclaims) must only "contain sufficient factual matter, accepted

---

[2]The custom product TNT sought was a hydraulic dual-line quick coupling with integral shunt valve.

as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] *Iqbal,* 129 S. Ct. at 1949. When the plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not satisfy the minimal pleading burden of Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 1950.

## II. ANALYSIS

Hyquip's amended counterclaims against Stucchi USA and its amended third party complaint against Stucchi Italy consist of claims for violation of procuring cause rights, breach of contract, anticipatory breach of contract, unjust enrichment, promissory estoppel, and tortious interference with agreement and prospective contractual advantage.

---

[3] The court is also guided by the Seventh Circuit recent synthesis of the Supreme Court's case law on Fed. R. Civ. P. 12(b)(6):

> "So, what do we take away from *Twombly, Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### A. Breach of Contract

To properly plead a breach of contract cause of action under Wisconsin law, plaintiffs must allege: "(1) a contract between plaintiff and defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 2006 WI App 39, 11 714 N.W.2d 582. The court originally found that Hyquip had failed to state claim for breach of contract because Hyquip's allegations did not sufficiently allege that an enforceable contract existed between the parties. The court went one step further and found that, even assuming the Stucchi-Hyquip distributor agreement was a binding and enforceable contract, Hyquip's breach of contract claim still failed because the general distributor agreement was not exclusive. In an effort to correct its pleading mistakes, Hyquip appears to have narrowed its breach of contract claim to an allegation that Stucchi USA and Stucchi Italy breached the parties' binding and enforceable oral agreement that Hyquip would serve as the exclusive distributor of the custom product to TNT.[4] Thus, the first issue before the court is whether Hyquip has sufficiently corrected its mistakes to allege the existence of a contract between the parties.

---

[4] Although Hyquip alleges it brought TNT's business to Stucchi USA and Stucchi Italy pursuant to the general Hyquip-Stucchi distributor agreement, Hyquip's allegations concerning its breach of contract claim focus on Stucchi's alleged breach of the exclusive distributor agreement formed between the parties with respect to the TNT custom product and not the general distributor agreement.

The Seventh Circuit has held that it is not enough, under *Iqbal*'s conclusory standard, to allege the existence of contract, without setting forth the details that establish the formation of a contract. *See Bisseur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602-03 (7th Cir. 2009). In this case, Hyquip has remedied its past mistakes. The amended counterclaims allege that "Hyquip had formed an agreement with respect to the new custom product for TNT in which Stucchi USA and Stucchi S.p.A. would be the exclusive supplier/manufacturer and Hyquip would be the exclusive distributor of the new custom product to TNT." (Am. Countercl. and Third Party Compl. ¶ 44). Hyquip supports this allegation by citing to an email sent by Stucchi Italy to Hyquip, confirming that it was "'very happy to see [Hyquip] on board as new partner on [sic] order to help the distribution of [Stucchi's] product.'" (Am. Countercl. and Third Party Compl. ¶ 50). Hyquip further alleges the terms of the exclusive distributor agreement were finalized at a meeting between the companies on June 8, 2009. Specifically, Hyquip claims that, during the meeting, TNT stated that Hyquip "would need to keep one month's inventory [of the custom product] in order to meet TNT's distributor's demands for the product, and Hyquip agreed to do so." (Am. Countercl. and Third Party Compl. ¶ 81). Moreover, Hyquip alleges that the companies agreed a minimum of 4,000 to 5,000 custom products would be purchased in the first year and that Hyquip would sell the custom product to TNT for $259 each, and Stucchi USA would sell the custom product to Hyquip at a price that would allow a distributor margin of 20%. (Am. Countercl. and Third Party

Compl. ¶¶ 82, 84). Here, the court finds that Hyquip has plausibly alleged the existence of an oral and exclusive distribution agreement between the parties as Hyquip has pled sufficient facts that relate to the formation of the contract and at least some of its terms.[5]

In their motion to dismiss, the Stucchi companies do not challenge Hyquip's allegations regarding the formation of the oral agreement, rather they take issue with the contract's validity, arguing the oral contract is void under the statute of frauds because the distributor agreement clearly was meant to run for some period greater than one year. Wisconsin's statute of frauds provides that "[e]very agreement that by its terms is not to be performed within one year from the making thereof" is void unless it is in writing. Wis. Stat. § 241.02(1)(a). Hyquip, on the other hand, contends that because performance of the agreement was contingent on TNT's demand for the product, and it is possible that TNT may have decided to stop purchasing the custom product within the first year, the contract does not fall within the statute of frauds, because it was not impossible for it to be performed in less than one year.

The parties' focus on the statute of frauds is not entirely misplaced; however, the indefinite duration of the contract presents a somewhat broader question than simply whether the agreement falls within the statute of frauds. It also presents the

---

[5]In this court's view, there is still some question whether Hyquip has alleged the purported exclusive distributor agreement was based upon present valuable consideration, as it is unclear what obligation was imposed upon Hyquip. However, the court infers from the pleadings that Hyquip promised to use its best efforts to pursue the contract and to promote the custom product to TNT.

question of whether the contract was terminable at will and, if so, the effect of this on Hyquip's breach of contract claim. Under Wisconsin law, contracts for an "indefinite duration are terminable at will . . . or they are void for failing to comply with the statute of frauds requirement that contracts that cannot be completely performed within one year must be reduced to writing." *Landess v. Borden*, 667 F.2d 628, 631 (7th Cir. 1981) (apply Wisconsin law). Furthermore, Wisconsin law provides that an exclusive distributorship contract having no provisions concerning termination can be terminated only after reasonable notice. *See California Wine Ass'n v. Wisconsin Liquor Co. of Oshkosh*, 20 Wis.2d 110, 121 N.W.2d 308 (Wis. 1963); *see also Flores v. Raz*, 250 Wis.2d 306, 640 N.W.2d 159 (Wis. Ct. App. 2001) ("A contract which is silent as to its time of duration may be terminated at any time by either party upon reasonable notification to the other party.").

Hyquip clearly does not wish the court to construe its exclusive distributor agreement as void, as it argues the contract could have been performed within one year, thereby removing it from the statute of frauds. Therefore, the court assumes it was terminable at will. Thus, when Stucchi USA informed Hyquip on June 18, 2009, that it would no longer seek Hyquip's assistance as the exclusive distributor of the custom product to TNT, Stucchi effectively terminated the exclusive distributor agreement. Hyquip does not dispute that the agreement was unequivocally terminated on this date; it merely argues that this termination constituted a breach of the parties' valid and binding contract.

Unfortunately for Hyquip, the June 18, 2009 termination did not constitute a breach of contract on the part of the Stucchi companies because the right to terminate at will was inherent in the nature of the contract, due to the contract's indefinite duration. Furthermore, it is not relevant that after alerting Hyquip to the termination of the agreement, the Stucchi companies may have entered into an agreement with TNT whereby they would sell the custom product directly to TNT. This is because the contract between the Stucchi companies and Hyquip was already terminated and, therefore, a separate agreement with TNT would not be in breach. Neither is it relevant that Hyquip suffered losses associated with the termination. Again, this is an inherent probability of an at will contract. *See Rakowski Distributing, Inc. v. Marigold Foods, Inc.,* 193 F.3d 504, 508 (7th Cir. 1999) (applying Wisconsin law) ("[t]ermination at will often has harsh consequences for the ousted party, whether within the context of an employment relationship, an agency, or a more general contract for services, but that is simply a risk of doing business that both parties must address.").

Accordingly, the only breach of contract that could possibly have occurred in this case is Stucchi USA's or Stucchi Italy's failure to give reasonable notice to Hyquip before termination of the agreement. *See California Wine Ass'n*, 20 Wis.2d at 125 (finding "an exclusive distributorship contract having no provisions concerning termination can be terminated only after the giving of reasonable notice."). Hyquip makes no allegations concerning the reasonableness of the notice given before

termination and, therefore, it has not sufficiently alleged an essential element of its claim for breach of contract. Therefore, the motion to dismiss Hyquip's breach of contract claim will be granted.

B. **Anticipatory Breach of Contract**

Similarly, Hyquip's claim for anticipatory breach of contract must be dismissed. Anticipatory breach of a contract occurs when a party disclaims a contractual duty prior to the time specified in the contract for the performance of the duty. *See Wisconsin Power & Light Co. v. Century Indem. Co.*, 130 F.3d 787, 793 (7th Cir. 1997) (applying Wisconsin law). Even assuming a valid and enforceable contract existed between the parties, Hyquip's allegations of anticipatory breach are deficient because they, too, focus on Stucchi USA's and Stucchi Italy's termination of the agreement on June 18, 2009, without accounting for the fact that the contract was terminable at will. With that in mind, the Stucchi companies' termination of the agreement in June of 2009 was not an anticipatory breach but rather a lawful exercise of their right to terminate the agreement at any time for any reason. Furthermore, Hyquip makes no allegations that it knew Stucchi USA and Stucchi Italy had taken steps or determined they would disregard Hyquip as the sole distributor of the custom product before June 18, 2009. Therefore, the court concludes Hyquip has failed to state a claim for anticipatory breach of contract.

## C. Violation of Procuring Cause Rights

Under Wisconsin law, it is a generally recognized rule that when an "agent accomplishes the result for which he or she was retained a principal cannot avoid paying commissions by merely terminating the agency." *Leen v. Butter Co.*, 177 Wis.2d 150, 153, 501 N.W.2d 847, 848 (Wis. Ct. App. 1993); *see* Restatement (Second) of Agency § 454 (1958) ("An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished as the result of the agent's prior efforts."). Known as the procuring cause doctrine, a selling agent is deemed to have earned "his commission when he procures an order from a ready, willing, and able purchaser, and this order is received by the company." *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 430-31, 234 N.W.2d 921, 924 (Wis. 1975). An agent who seeks commissions for sales that are made after termination of the agency must prove two elements: (1) that the agency was terminated by the principal to avoid paying the commissions; and, (2) that the agent was the "procuring cause" of the sales. *Leen v. Butter Co.,* 177 Wis.2d at 153.

In this case, the Stucchi companies argue that an agency contract is necessary to maintain a cause of action for procuring cause and Hyquip's allegations fail to demonstrate that it was an employee, agent, or broker of the Stucchi companies, or that it was working on behalf of or with the authority of Stucchi USA

or Stucchi Italy. (Mot. to Dismiss ¶ 22-23). "'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Strupp v. Farmers Mut. Auto. Ins. Co.*, 14 Wis.2d 158, 167, 109 N.W.2d 660, 665 (Wis. 1961) (quoting 1 Restatement of the Law, Agency (2d), p. 7, see. 1(1)). The determination of whether a principal-agent relationship exists turns on the facts concerning the understanding between the alleged principal and agent. *Johnson v. Minnesota Mut. Life Ins. Co.,* 151 Wis.2d 741, 748, 445 N.W.2d 736, 738 (Wis. Ct. App. 1989).

It is difficult in this case to precisely define the relationship between the parties. Indeed, that is the very essence of this litigation. However, the nature of the arrangement between Hyquip and the Stucchi companies contains substantial aspects of an agency contract. It also contains substantial aspects of a contract of sale. In any event, the court concludes that further development of the record is necessary to determine the precise nature of the relationship between the parties and whether the agreement formed a principal-agent relationship, or rather some hybrid, and, if so, whether the procuring cause doctrine applies to that type of arrangement. As Hyquip has plausibly alleged that the purported agency was terminated by Stucchi USA and Stucchi Italy to avoid paying Hyquip its distributor margin (or commission), and that Hyquip was the "procuring cause" of the future sales of the custom product from Stucchi USA and Stucchi Italy to TNT, the court will

not dismiss Hyquip's claim of a violation of its procuring cause rights at this stage in the proceedings.

### D. Unjust Enrichment and Promissory Estoppel

With regard to Hyquip's unjust enrichment and promissory estoppel claims, Stucchi USA and Stucchi Italy argue these claims should be dismissed because they are merely an impermissible attempt to get a second bite at the apple in the event Hyquip fails to prove a breach of contract. (Mot. to Dismiss ¶ 27). Hyquip concedes that once the merits are reached, the alternative theories cannot succeed along with the contractual theories, however, it asserts that it has a right at this stage of the proceedings to plead in the alternative. Hyquip is correct that Federal Rule of Civil Procedure 8(e)(2) permits a party to plead alternative theories of relief under both legal and equitable grounds, even if the theories are inconsistent. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 397 (7th Cir. 2003). However, "where a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim." *Harley Marine Services, Inc. v. Manitowoc Marine Group, LLC*, --- F.Supp.2d ----, 2010 WL 5463838, at *3 (E.D. Wis. Dec. 30, 2010) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("[a] plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits....")).

Here, though Hyquip has alleged the existence of a contract and has not pled that the contract was invalid or potentially invalid, the Stucchi companies have both disputed the contract's existence and validity. *See Decatur Ventures, LLC v. Stapleton Ventures, Inc.,* 373 F.Supp.2d 829, 849 (S.D. Ind. 2005) ("Plaintiffs' unjust enrichment claim becomes superfluous when neither side disputes the existence of a valid contract, even if it is being alleged in the alternative. .... Plaintiffs went so far as to attach copies of the express contracts between Decatur and NovaStar to their complaint, and NovaStar does not dispute the existence or validity of the contracts. Accordingly, Plaintiffs' unjust enrichment claim is inappropriate."). Furthermore, the court finds that, based on the facts pled by Hyquip, it could be inferred that the contract on which its breach of contract claim is based might be invalid. Therefore, the court will not preclude Hyquip from pleading in the alternative even though such equitable claims "open avenues of discovery far beyond what is needed to dispose of a breach of contract claim," and, thus, run the risk of diverting the parties from the path to a "just, speedy, and inexpensive determination" of the action that the Rules are intended to further. *Harley Marine Services, Inc.*, 2010 WL 5463838, at *3; Fed.R.Civ.P. 1.

Next, the court reviews whether Hyquip has sufficiently stated a claim for relief under its theories of unjust enrichment and promissory estoppel. The three elements of a cause of action for unjust enrichment are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the

defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 83 Wis.2d 686, 688-89, 266 N.W.2d 361 (Wis. 1978). "In an action for unjust enrichment, recovery is based upon the universally recognized moral principle that one who has received a benefit has the duty to make restitution when to retain such benefit would be unjust." *Id.* at 689, 266 N.W.2d 361.

Here, Hyquip has alleged it conferred a substantial benefit upon Stucchi USA and Stucchi Italy by establishing a new demand for a custom-made Stucchi product and by facilitating the relationship between TNT and the Stucchi companies. (Am. Countercl. and Third Party Compl. ¶ 114). The facts alleged by Hyquip sufficiently demonstrate that Stucchi USA and Stucchi Italy had knowledge of and accepted the benefit conferred on them. Lastly, the court finds that Hyquip has plausibly alleged that under the circumstances it would be inequitable for the defendant to retain the benefit without payment of its value. Accordingly, the court will allow further development of the record as to this claim.

In order to advance a claim for promissory estoppel, Hyquip must allege three elements: (1) a promise was made which one would reasonably expect to induce action or forbearance by Hyquip; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcing the promise. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 698, 133 N.W.2d 267 (Wis. 1965).

In this case, Hyquip alleges that Stucchi USA and Stucchi Italy promised and assured Hyquip it would be the exclusive distributor of the custom product to TNT, a promise that the Stucchi companies should reasonably have expected would induce Hyquip to expend time and resources in furtherance of its role as exclusive distributor of the custom product. (Am. Countercl. and Third Party Compl. ¶¶ 44, 50, 55, 130). Hyquip further alleges that it did indeed expend considerable employee time as well as company resources in developing the relationship between Stucchi and TNT, developing the custom product for TNT, and promoting the Stucchi companies and the Stucchi custom product to TNT. (Am. Countercl. and Third Party Compl. ¶131). Lastly, Hyquip has plausibly alleged that injustice can be avoided only by enforcing the promise. (Am. Countercl. and Third Party Compl. ¶ 134). As such, the court finds that Hyquip has stated a claim for relief under the equitable theory of promissory estoppel.

In response to Hyquip's equitable claims for relief, the Stucchi companies argue that a contract that is otherwise void under the statute of frauds can only be enforced under a claim for equitable relief, such as unjust enrichment or promissory estoppel, if the void contract or promise induced a change in the party's position and this change would result in fraud, injustice, or undue influence. (Mot. to Dismiss ¶¶ 28-30). Accordingly, the Stucchi companies argue that because Hyquip does not plausibly allege it made a detrimental change in its position, it does not state a claim for equitable relief. However, as discussed above, Hyquip did make allegations that

it expended considerable time and resources in facilitating the relationship between the Stucchi companies and TNT and in developing the custom product for TNT. Thus, the court will allow Hyquip to move forward with both claims for equitable relief.

> **E. Tortious Interference with Agreement and Prospective Contractual Advantage**

To prevail on a tortious interference with contract claim under Wisconsin law, a plaintiff must satisfy five elements: (1) an actual or prospective contract existed between the plaintiff and a third party; (2) the defendant interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused the plaintiff to sustain damages; and (5) the defendant was not justified or privileged to interfere. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). Here, Hyquip has plausibly alleged that it had an oral agreement with TNT with respect to Hyquip's supplying the custom product to TNT. (Am. Countercl. and Third Party Compl. ¶121). As the court has previously noted, Hyquip has also alleged facts that, if true, would make it plausible that the Stucchi companies "knew or should have known" that selling the custom product directly to TNT would interfere with Hyquip's prospective contract to sell the custom product to TNT. (Order at 13) (Docket #49). As such, Hyquip has sufficiently alleged that the interference was intentional. Moreover, Hyquip has plausibly alleged that the interference was improper because it now claims that Stucchi USA and Stucchi Italy had entered into an exclusive contract with Hyquip for the sale of the custom product to Hyquip, which

-17-

Hyquip would then sell to TNT. Accordingly, the court finds that Hyquip has stated a claim for relief under this theory of law.

## CONCLUSION

As a final note, Stucchi USA has requested that the court enter judgment as to its first count for declaratory judgment that Hyquip does not qualify as a "dealer" under the Wisconsin Fair Dealership Law ("WFDL") and is not entitled to its protections. (Mot. to Dismiss at 4). Hyquip does not oppose this request. Although Stucchi USA has ambiguously labeled the request as both one for summary judgment as well as one for a judgment on the pleadings, the court will construe the motion as one for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 709 (7th Cir. 2003). Such a motion should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief." *Id.* In evaluating the motion, the court accepts all "well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.; see also Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("A complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations.") (internal citations omitted). With these legal standards in mind, the court finds it appropriate to grant Stucchi USA's motion for judgment on the pleadings as to its first count for declaratory judgment. In making this finding, the

court concludes that Hyquip cannot prove any set of facts that would support a claim under the WFDL.

With regard to the Stucchi companies' motion to dismiss, the court has found that Hyquip has failed to state a claim that Stucchi USA and Stucchi Italy breached or anticipatorily repudiated their oral exclusive distributor agreement. Accordingly, the court will dismiss Count II of Hyquip's amended counterclaims and third party complaint. The court will dismiss Count II with prejudice. Though leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), dismissal with prejudice remains within the discretion of the district court. *See James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 401 (7th Cir. 2006). Given the discretion of the court in this matter, and in light of the one amended complaint already permitted by the court which afforded Hyquip ample opportunity to amend its complaint to state a breach of contract claim, the court finds the wiser exercise of its discretion would be to dismiss with prejudice. *See Fannon v. Guidant Corp.*, 583 F.3d 995, 1002 (7th Cir. 2009) (teaching that a reasonable opportunity to construct a complaint that states a claim, and failing to do so, is grounds enough for exercise of a court's discretion). On the other hand, the court has found that Counts I, III, IV, and V allege sufficient facts to state a plausible claim for relief and, thus, these claims will survive dismissal.

Accordingly,

**IT IS ORDERED** that plaintiff's and third party plaintiff's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (Docket #53) be and the same is hereby **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that Count II of the defendant's Amended Counterclaims and Third Party Complaint (Docket #50) be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that plaintiff's motion for judgment on the pleadings as to its first count for declaratory judgment be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 20th day of April, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge